# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

JOSÉ F. BATISTA            :
     *Plaintiff,*       :
                         :
     vs.                  :       C.A. No. 2021-138-MSM-PAS
                         :
CITY OF PROVIDENCE ET AL,    :
     *Defendants.*     :

## REPLY MEMORANDUM
## IN FURTHER SUPPORT OF MUNICIPAL DEFENDANTS'
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Municipal Defendants—the City of Providence ("the City"), the Providence External Review Authority ("PERA"), and its current and former members—submit this reply memorandum in further support of their motion to dismiss (ECF. No. 6) and in response to Plaintiff José F. Batista's ("Plaintiff") objection to said motion (ECF No. 10).

## I.    INTRODUCTION

In his oppositional papers, two main themes emerge: Plaintiff seems to argue that the standard of review entitles him to favorable interpretations ***of law*** and that his complaint brings claims in ***the public's*** interest. Neither of these is a valid argument rebutting the legal grounds presented by Municipal Defendants for dismissal, nor do they render Plaintiff's claims plausible as alleged.

In this reply, Municipal Defendants elaborate on these problematic themes as well as some of the other issues with Plaintiff's oppositional arguments. Although most of the arguments made by Plaintiff already have been addressed in Municipal Defendants' memorandum in main, Municipal Defendants take this opportunity to

address some salient issues raised by Plaintiff's opposition to Municipal Defendants' motion to dismiss.

## II. ARGUMENT

### A. The Themes Plaintiff Stresses in His Opposition Papers Do Not Save From Dismissal Otherwise Implausible Legal Claims

#### 1. Under the Applicable Standard of Review, Plaintiff is Entitled to Reasonable *Factual* Inferences in His Favor, Not Favorable *Legal* Interpretations

Plaintiff's objection misconstrues, in several instances, the applicable standard of review on a motion to dismiss. This Court's review of a motion to dismiss requires reasonable *factual* inferences in Plaintiff's favor. Importantly, on a motion to dismiss "the tenet that a court must accept as true all allegations contained in a complaint is **inapplicable** to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added). Rather, on a motion to dismiss the Court is to "begin by identifying and disregarding statements in the complaint that merely offer legal conclusions couched as fact." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011); *see also Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) (on a motion to dismiss the Court is to "isolate and ignore statements in the complaint that simply offer legal labels and conclusions"). Nonetheless, throughout Plaintiff's objection it is several times stated or implied that this Court must provide him with deference as to his **legal** interpretations and conclusions. This is erroneous.

By way of example, with regard to his First Amendment claim, Plaintiff states that he is "entitled to the inference that his speech [in releasing the subject

2

video] was not simply pursuant to his job duties but rather due to his duties as a citizen subject to Rhode Island law." *Pltf's Objection*, at 13. This is untrue. Rather, the First Circuit repeatedly has held that "this is a question of law for the court when … the material facts are not in dispute." *Foley v. Town of Randolph*, 598 F.3d 1, 5 n.7 (1st Cir. 2010). For purposes of this motion to dismiss, Municipal Defendants accept the facts as alleged and submit that they nonetheless demonstrate Plaintiff's speech was made pursuant to his job duties.

With regard to Plaintiff's purported claims brought under the Access to Public Records Act ("APRA"), Plaintiff argues that because of his "entitlement to a favorable inference at this juncture," Defendants cannot disprove that APRA "required" disclosure of the subject video. *See Pltf's Objection*, at 27. Nonetheless, absent a factual issue that might bear on whether or not a document is public under APRA, what APRA does and does not require–and whether or not it provides a remedy for Plaintiff on the facts alleged in this case—is a legal question on which Plaintiff is not entitled to deference.

As a last example, with regard to the claim Plaintiff attempts to bring under § 18½-2 of the Providence Code of Ordinances, the so-called PERA ordinance, Plaintiff's objection implores this Court not to ignore "Plaintiff's right to favorable inferences drawn from the ordinance." *See Pltf's Objection*, at 35. As controlling law makes clear, this Court has no obligation to render legal conclusions—like the interpretation of a city ordinance—in a manner favorable to Plaintiff. That, of course, is a legal question.

Municipal Defendants respectfully ask this Court to disregard the arguments in Plaintiff's objection that this Court, in reviewing his complaint, is to "tak[e] *all* favorable cumulative inferences therefrom" in his favor. *Pltf's Objection*, at 41 (emphasis added). Plaintiff is entitled to reasonable *factual* inferences in his favor. He is not entitled to deference on a motion to dismiss as to the legal interpretations and arguments of law contained in his complaint (and objection).[1]

## 2. Plaintiff Does Not Have Standing to Pursue "the Public's Interest"

As argued in Municipal Defendant's memorandum in main, several of the claims brought by Plaintiff in this action suffer from his want of standing and/or the fact that the law under which he purports to bring a claim does not provide for the

---

[1] Additionally, Municipal Defendants note that Plaintiff's objection includes several *unreasonable* factual inferences, many of which are premised on inferring malicious and intentional disregard for the law and issues of public importance by the City generally or its public officials specifically. *See, e.g., Pltf's Objection*, at 10 ("it is a reasonable inference that the [Defendants] are not interested in truth or justice"). Municipal Defendants assert—for whatever it might be worth on this motion—that the City acts with due regard for the law, is mindful of often competing public interests involved in the performance of its duties, and consistently has been a national leader in community policing reform for the past twenty years. Indeed, the success of the City's community-policing policies has been recognized by the United States Department of Justice, which selected the City's police department to create a national protocol for police community partnerships and to testify before a congressional sub-committee on community police relations.

Municipal Defendants also take the opportunity here to address Plaintiff's assertion that it is a conflict of interest for city solicitors to represent both the police department and PERA. *See Pltf's Objection*, at 9 n. 4. Rather, local law requires that city solicitors represent and counsel both municipal agencies. The City's Charter provides that the city solicitor, him/herself or by and through his/her subordinates, is "[t]o be the chief legal advisor of and attorney for the city and *all* departments, boards, commissions, bureaus and officers thereof in matters relating to their official powers and duties." *Providence Home Rule Charter*, art. VI, § 613(b)(2) (emphasis added). It further provides that "[n]o department, board, commission, bureau or officers shall employ any other attorney at the expense of the city … unless otherwise provided by this Charter" or unless approved by the city council. *See id.* Applicable professional conduct standards do not prohibit such representation. Notably, the commentary to Rule 1.13 of the Rhode Island Supreme Court's Rules of Professional Conduct, governing "Organization as client," provides that "[d]efining precisely the identity of the client and prescribing the resulting obligations of such lawyers may be more difficult in the governmental context and *is a matter beyond the scope of these Rules*." (Emphasis added.) The city solicitor's office strives to perform its Charter-mandated functions in a professionally ethical manner at all times.

private remedy he seeks. Plaintiff's objection attempts to cloud these legal issues by asserting throughout that "[t]he heart of th[is] matter is the [sic] protecting ***the public's right*** to public information," *Pltf's Objection*, at 4 (emphasis added), and by stressing "[t]he public's interest in APRA and PERA," *id.* at 9, "the public's interest in the video," *id.* at 41, and that this case might be "the single greatest public interest in a public document in Rhode Island history." *Id.* at 28.

To the contrary, this is a private cause of action seeking private remedies— including money damages and/or injunctive relief reinstating Plaintiff in his former job. Although many statutes provide or create private causes of actions as a means of enforcement, in circumstances where they do not, reliance on underlying public interests is not a legal basis for creation of a remedy where none exists. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856 (2017) ("[i]f the statute itself does not display an intent to create a private remedy, then a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute") (internal quotations and brackets omitted); *see also infra* at 14-15 (discussing this more particularly in the context of Plaintiff's APRA arguments).

### B. <u>Municipal Defendants Seek Judgment on the Merits, Not Want of Jurisdiction</u>

To be clear, Municipal Defendants seek a meritorious decision based on Plaintiff's failure to state a claim. Municipal Defendants feel inclined to address that their motion is not, as Plaintiff argues, "a Matryoshka 'Russian Doll' challenge" actually interested in "removal from federal jurisdiction." *See Pltf's Objection,* at 2.

Rather, Municipal Defendants tried to present their arguments in a logical manner such that, should the Court agree with Municipal Defendants and dismiss all federal claims, it could, in its discretion, decline to exercise supplemental jurisdiction over Plaintiff's state law claims without reaching them on their merits. As Municipal Defendants previously noted, this is a matter of the Court's discretion. *See* 28 U.S.C. § 1367(c)(3).

### C. This Court Should Dismiss (or, with Respect to Procedural Due Process, at Least Limit) Plaintiff's Federal Claims

For the reasons previously made in Municipal Defendant's memorandum in main, and for the additional reasons discussed below, this Honorable Court should dismiss Plaintiff's federal questions.

#### 1. Plaintiff's First Amendment Arguments Reinforce That the Speech at Issue Is Not Protected

As discussed in Municipal Defendants' memorandum in main, the First Amendment does not shield public employees from discipline for "the expressions employees make pursuant to their professional duties." *Garcetti v. Ceballos*, 547 U.S. 410, 426 (2006); *see Foley v. Randolph*, 598 F.3d 1, 5 (1st Cir. 2010) (in determining whether a public employee's speech is entitled to First Amendment protection, the public employee must be "both (1) speaking about a matter of public concern and (2) speaking as a citizen"). In this case, "there is no plausible inference which can be drawn from the complaint" that Plaintiff's alleged speech was made in his capacity as a citizen. *Gilbert v. City of Chicopee*, 915 F.3d 74, 83 (1st Cir.

2019). Municipal Defendants submit that Plaintiff's arguments in support of his First Amendment claim do little to help his cause and, instead, support dismissal.

First, Plaintiff tries to rely on a factual distinction between this matter and *Garcetti* to argue that the speech at issue—which, in his objection, Plaintiff limits to his "communicat[ion] via publication to the press" of the subject video, *see Pltf's Objection*, at 11—is protected because it was "made to the public" rather than to his superiors.[2] To whom Plaintiff's speech was directed, however, is irrelevant under *Garcetti*. *See* 547 U.S. at 420-21 ("[t]he dispositive factor here is ***not*** that [the plaintiff] expressed his views inside his office, rather than publicly") (emphasis added). The Supreme Court in *Garcetti* gave two examples of "the kind of activity engaged in by citizens who do not work for the government": (1) a letter written to a local newspaper and (2) a political discussion with a colleague. *Garcetti*, 547 U.S. at 423. Both in the Court's view were likely to constitute potentially protected speech even if made by a public employee. *See id.* Obviously, one is "made to the public" and one is not—and this was not dispositive to the analysis.

Indeed, in *Foley* the First Circuit held that the plaintiff's speech was not protected by the First Amendment where the speech at issue was given by a public employee to the media at a press conference—i.e., made to the public. *See* 598 F.3d at 6-7. Rather, the First Circuit found, under the circumstances of that case, that the plaintiff "addressed the media in his official capacity … at a forum to which he had access ***because of*** his position." *Id.* at 7 (emphasis added). Municipal

---

[2]    As with Municipal Defendant's memorandum in main, Municipal Defendants assume for purposes of this motion that the release of a government record constitutes "speech."

Defendants submit that the factual circumstances in *Foley* are strikingly analogous to those at issue in this case.

Second, Plaintiff argues that his alleged speech is protected because it "was not derived ***solely*** from any professional duties Defendants' might argue are applicable, the duty is also derived from the Access to Public Records Act." *Pltf's Objection*, at 12 (emphasis added). While Municipal Defendants do not agree that APRA legally imposed any duty generally or specifically on Plaintiff to release the subject video, assuming it did, this would ***support*** the conclusion that Plaintiff's speech was "made pursuant to his duties" as PERA's executive director.

In other words, to the extent Plaintiff argues that APRA made him exclusively responsible for responding to the APRA requests alleged in his complaint, *see Pltf's Objection*, at 27 (in the context of his APRA claim), and that his actions were taken because he was a public employee with knowledge that the public body was allegedly not complying with APRA, *see id.* at 24-25 (in the context of his APRA claim), that purported responsibility (and obligation) was by virtue of his employment and employment duties, undercutting any argument that First Amendment protection applies. *See Gilbert*, 915 F.3d at 82 ("whether the employee's speech derived from special knowledge obtained during the course of employment" is one of several factors indicating the speech was made in a professional capacity and is unprotected); *Slattery v. Town of Framingham*, No. 17-cv-11187-IT, 2020 WL 6566553, at *7 (D. Mass. Nov. 9, 2020) ("misconduct complaints and grievances" are not protected because "'[t]his type of

communication—complaints or concerns made up the chain of command—is the quintessential example of speech that owes its existence to a public employee's official responsibilities'") (quoting *Gilbert*, 915 F.3d at 83-84).

In any event, it is impractical to accept Plaintiff's argument that his "speech was compelled by his citizenry's literal obligation to follow the laws of [APRA]." *Pltf's Objection,* at 14. *See Foley*, 598 F.3d at 6 (explaining the "proper inquiry" into whether a public employee was or was not speaking as a citizen is "a practical one"). Any such compulsion would derive from Plaintiff's employment duties. APRA does not make "citizens" responsible for disclosing government documents deemed public by its terms.

Finally, Plaintiff's objection avers that, in the wake of *Garcetti*, courts have developed varying degrees of First Amendment protection for elected officials, appointed officials, and public employees and insinuates that as PERA's former executive director he is entitled to more protection because of his role in policy debate and development. *See Pltf's Objection*, at 12-13. In *Melville v. Town of Adams*, 9 F. Supp. 3d 77, 87-88 (D. Mass. 2014), cited by Plaintiff, the district court adopted the magistrate's recommendation that, in contrast to non-elected public employees, *Garcetti* does not apply to elected officials—recognizing, nonetheless, that "this question has yielded inconsistent results across federal courts." In a footnote, Plaintiff cites to an unpublished opinion, *Conservation Comm'n of Town of Westport v. Beaulieu*, C.A. No. 07-11087-RGS, 2008 WL 4372761, *4 (D. Mass. Sept. 18, 2008), which held that *Garcetti* did not require dismissal of First Amendment

claims brought against "appointed *public officials*." (Emphasis in original.) In that case, suit was brought against members of the Town of Westport's board of selectman. The plaintiffs in that case were appointed members of a conservation commission over which the selectman had appointment power but neither supervisory authority nor managerial control. *See id.* at *4.

Those lower courts that have carved out an exception from *Garcetti* for elected officials and officials on public boards and bodies appear to have done so in an attempt to reconcile *Garcetti* with First Amendment protections recognized in other cases—in particular *Boyd v. Floyd*, 385 U.S. 116, 135-37 (1966) (concluding that a legislator, speaking in her official capacity on issues of public policy, was protected by the First Amendment) and *Miller v. Town of Hull*, 878 F.2d 523, 532 (1st Cir. 1989) ("the act of voting on public issues by a member of a public agency or board comes within the freedom of speech guarantee of the first amendment"). Nothing in these cases suggests that speech requires "enhanced" protection under the First Amendment simply because it involves matters of policy debate or discussion.

Here, of course, Plaintiff was not an elected official or a member of a public board with voting power. Plaintiff, as PERA's executive director, was not a member of PERA. *See Providence Code of Ordinances § 18½-2*. Instead, Plaintiff worked as a salaried public employee while serving as PERA's executive director. He provided a copy of that position's job description to this Court as Exhibit 8 to his complaint (ECF No. 1-8)—which makes plain the position "reports to the PERA board" and

"provides support to the PERA board" (*id.* at *1)—and he has brought a claim related to his application for *unemployment* benefits. Regardless of his role in policy, he is not entitled to "enhanced speech protections." Rather, Plaintiff was a public employee whose alleged "speech" was made pursuant to his official duties. Accordingly, it is subject to *Garcetti* and not protected under the First Amendment.

### 2. Plaintiff's Procedural Due Process Claim, to the Extent Viable, is Limited to His Two-Year Employment Term

Municipal Defendants rely on their prior arguments with regard to Plaintiff's procedural due process claim. Nonetheless, Municipal Defendants point out here that, to the extent Plaintiff's two-year term of employment under the PERA Ordinance creates a cognizable property right in continued employment, it necessarily limits Plaintiff's "reasonable expectation that [his] employment will continue" beyond that two-year term. *Gomez v. Rivera Rodriguez*, 344 F.3d 103, 111 (1st Cir. 2003). In other words, assuming Plaintiff's two-year appointment creates a property right, he would have no reasonable expectation to continued employment after the expiration of that term. Of course, this restricts Plaintiff's legal entitlement to back pay damages and imposes constraints in equity on reinstatement to his position as PERA's executive director. *See Complaint*, at 28-30 (prayer for relief).

### 3. Substantive Due Process Claims Must Allege Conscious-Shocking Conduct

With regard to Plaintiff's substantive due process claim, Plaintiff argues that whether or not the City's actions were shocking to the conscious "is not clearly the

appropriate standard to apply." *Pltf's Objection*, at 20. This is wrong. Instead, it is clear that, in this jurisdiction, "conscious-shocking conduct is an indispensable element of a substantive due process challenge." *Depoutot v. Raffaelly*, 424 F.3d 112, 118 n. 4 (1st Cir. 2005).

Plaintiff cites to a concurring opinion authored by Justice Scalia in *NASA v. Nelson*, 562 U.S. 134, 159-69 (2011), to suggest this standard has been changed. Justice Scalia's concurrence did no such thing. Notably, the majority opinion in *NASA*, which found no violation of an assumed constitutional right to informational privacy, does not include any discussion of substantive due process. *See id.* at 146-47; *see also id.* at 162 (J. Scalia concurring) ("the Court does not play the substantive due process card"). Justice Scalia's concurrence addresses an argument apparently raised for the first and only time at oral argument that the right to informational privacy is rooted in the substantive component of the due process clause. *Id.* at 160-61. His concurrence proceeds to use this invocation as an opportunity to criticize "the faux 'substantive' component of the Due Process Clause," *id.* at 161, which precedent Justice Scalia makes plain he does not find rooted in the text of the federal constitution. Regardless, Justice Scalia's concurrence by no means changes the elements of a substantive due process claim.[3]

---

[3]  Furthermore, Plaintiff hardly benefits from Justice Scalia's legal opinion regarding the substantive due process component to the due process clause. If Justice Scalia's positions are taken to their logical conclusion, and were to be adopted by a majority of the Supreme Court, there would be no such thing as a substantive due process claim.

## D.     This Court Should Dismiss Plaintiff's State Law Claims

For the reasons previously made in Municipal Defendant's memorandum in main, and for the additional reasons discussed below, this Honorable Court should dismiss Plaintiff's state law claims.

### 1.     Plaintiff's APRA Claim Does Not Withstand Standing Requirements or APRA's Applicable Exemptions

The arguments in Plaintiff's objection with respect to his APRA claims disregard controlling precedent and the unambiguous provisions of that statute.

First, with respect to standing, Plaintiff asks this Court to conclude that Rhode Island Supreme Court precedent holding that "[APRA] only provides a remedy for those persons or entities that are denied access to public records," *Rhode Island Federation of Teachers, AFT-CIO v. Sundlan*, 595 A.2d 799, 800 (R.I. 1991), is not conclusive and is instead "semantically misleading language in dicta." *Pltf's Objection*, at 25. Plaintiff submits that because he was not seeking to stop disclosure of public documents, as was the case in *Sundlan*, that decision is inapplicable. *See id.*

This is plainly wrong. Despite any differences in the factual circumstances of *Sundlan* and the present matter, the decision in *Sundlan* that APRA only provides a judicial remedy to persons or entities denied access to allegedly public records is hardly dicta. *See Sundlan*, 595 A.2d at 801. The Supreme Court's decision in that case was based on "[a]n examination of the entire statute" and a review of "the remedies provided by APRA [as] set forth in § 38-2-7 through § 38-2-10." *Id.* at 800. The Court's holding in *Sundlan* was that the remedies available under APRA do not

extend beyond persons or entitles denied access to records alleged to be public. That holding is plainly applicable and controlling here.

As support for Plaintiff's erroneous interpretation of APRA and its controlling case precedent, Plaintiff persists—as mentioned above—that protection of the "public interest" supports his claim. He argues that "APRA's remedies lay with persons seeking to protect the public's interest in access to its own documents." *Pltf's Objection*, at 25. Plaintiff's argument overlooks that APRA already addresses protection of the public interest by unambiguously vesting that responsibility with the Rhode Island Attorney General. *See* R.I. Gen. Laws § 38-2-8(d). Under APRA, the attorney general has the exclusive authority to bring suit on behalf of the public interest. *See id.* ("[n]othing within this section shall prohibit **the attorney general** from initiating a complaint on behalf of the public interest") (emphasis added). If Plaintiff genuinely (yet unreasonably) believed the City was acting in contravention of APRA, he had the option of alerting the attorney general of his concerns, and the attorney general could decide whether to take appropriate action.

Accordingly, the "public interest" does not support the need for this Court to create a non-existent remedy in order to save Plaintiff's APRA claim from dismissal. As the Rhode Island Supreme Court has explained in interpreting APRA's available remedies:

> to inject a provision for a judicial remedy by way of injunction or otherwise into a statute that plainly does not contain such a remedy would be interpretation by amendment. In the event that the Legislature should decide to create such a judicial remedy, there is no question that it has the capacity to do so at any time it

> may so choose. It is not the function of [the] court[s] to rewrite or to amend statutes enacted by the General Assembly.

*See Sundlan*, 595 A.2d at 802. Plaintiff's arguments to the contrary are unsupported by text or case law and fail to state a claim.

Second, with respect to the applicability of several of APRA's exemptions, which allow a document to be deemed non-public, Plaintiff's objection peculiarly maintains that "the applicability of [APRA's] exemptions is only done upon the Court's analysis of the record," citing to § 38-2-9(b) of APRA. *Pltf's Objection*, at 26. This is not what § 38-2-9(b) requires and, if taken to its logical conclusion, would mean that the courts would need to be involved in *every* APRA request in which a public body seeks to rely upon an exemption to withhold a record from public disclosure. Not only do APRA's response and disclosure deadlines hardly facilitate the time for judicial intervention, *see* R.I. Gen. Laws §§ 38-2-3(e) and 38-2-7(a) and (b), such a requirement would be a wildly burdensome procedure for both public bodies and the judiciary. Municipal Defendants submit that this Court can consider—without the need for review of the subject video—Plaintiff's allegations as well as facts susceptible to judicial notice on a motion to dismiss and conclude that, even in the light most favorable to Plaintiff, one or more of APRA's exemptions to public disclosure apply, as previously argued in Municipal Defendants' memorandum in main.

### 2. The Favorable Factual Inferences Plaintiff Stresses in Support of His Limited-Access Open Meetings Act Claim Are Legally Irrelevant

With respect to Plaintiff's Open Meetings Act ("OMA") claims, Municipal Defendants address here only Plaintiff's conclusory argument that OMA permits this Court to void his termination (or, more appropriately at this juncture, allow his limited-access OMA claim to survive dismissal) because "[a]t this juncture Plaintiff is entitled to the favorable reasonable inference that [his alleged] OMA participatory disadvantage contributed to [PERA's] decision to terminate him." *Pltf's Objection*, at 32. As he does throughout his objection to dismissal, this request weaves together, yet again, several layers of favorable factual inferences ***and legal interpretations***—the latter of which is not entitled to any deference by this Court.

In essence, Plaintiff seemingly argues that, because of the possibility that not every member of the public who wished to provide public comment was able to do so at the hearing at which Plaintiff was terminated, it can be inferred that this somehow harmed him in an actionable way—perhaps based on the (unreasonable) inference that a few more public comments could have persuaded PERA to act differently. Even assuming this supposed "participatory disadvantage," it is legally irrelevant and hardly creates a plausible claim under OMA for at least three reasons (all of which were previously discussed in Municipal Defendants' memorandum in main).

First, this argument still attempts to assert standing on behalf of third-person members of the public. Regardless of whatever perceived disadvantage

might be inferred on the part of Plaintiff by a less robust public comment period, OMA grievances are premised on an individual's "right to be 'advised of and aware of' the performance, deliberations, and decisions of government entities." *Tanner v. Town Council of Town of E. Greenwich*, 880 A.2d 784, 792 (R.I. 2005). Plaintiff, by virtue of his attendance at the hearing, is not personally aggrieved by the fact third-persons might not have been able to provide public comment. This is because OMA is concerned about openness and transparency. It is not, contrary to Plaintiff's assertions, concerned about, nor does it in any way purport to influence, the decisions of a public body. Accordingly, although OMA protects these third persons' right to be advised of and aware of the public body's performance, deliberations, and decisions, it does not protect Plaintiff from a third-person's alleged inability to potentially change a public body's decision.

Second, and along this point, Plaintiff's argument assumes that OMA requires that public bodies afford "all members of the public" who wish to speak and participate in a public meeting the opportunity to do so. It plainly does not. Rather, "[n]othing contained in [OMA] requires any public body to hold an open forum session, to entertain or respond to any topic nor does it prohibit any public body from limiting comment on any topic at such open forum session." R.I. Gen. Laws § 42-46-6(d). Because PERA could have lawfully limited public comment under OMA, the possibility that it inadvertently did so because of technology limits cannot amount to an OMA violation.

Third, to the extent this argument relies upon Plaintiff's alleged violation by PERA of Executive Order 20-46 (assuming such a violation is actionable), it relies upon an erroneous interpretation of that Executive Order. Plaintiff's argument assumes that the Executive Order gives members of the public the right to participate remotely as if they are members of the public body. *See Pltf's Objection*, at 31. It does not. Rather, it gives this right to "any party entitled or required to appear before" the public body. ECF No. 1-6, at *3. By virtue of § 42-46-6(d) however, members of the public are ***not*** parties "entitled or required to appear." Indeed, the Executive Order expressly addresses the rights of members of the public. It provides that the public body must provide for remote ***participation*** by members of the public (as opposed to the ability simply to ***follow*** the proceedings in real time) only in circumstances where that is "a specific requirement of a state or local law." *Id.* at *3. Tellingly, Plaintiff has not alleged or argued a state or local law that requires participation by members of the public in deliberations regarding termination of PERA's executive director (nor are there any).

This is to say that, even with the favorable *inference* that the alleged "participatory disadvantage contributed to PERA's decision to terminate Plaintiff," this does not create or amount to a plausible OMA violation.[4]

---

[4]     Municipal Defendants do not address in this reply the implausibility of Plaintiff's notice-based OMA claim(s) and rely upon their memorandum in main, as it sufficiently addresses the arguments in Plaintiff's objection.

### 3. Municipal Defendants *Dispute* That They "Denied" Plaintiff's Unemployment Claim

Plaintiff's objection oddly asserts that it "is undisputed that Defendants denied Plaintiff's unemployment claim" and then proceeds to offer no rebuttal to the legal arguments made in Municipal Defendants' motion to dismiss. *Pltf's Objection*, at 33. To be clear, it *is* disputed that Municipal Defendants denied Plaintiff's unemployment claim. Nonetheless, as the *law* cited in Municipal Defendant's memorandum in main makes plain, it is the Rhode Island Department of Labor and Training that approves or denies unemployment claims. *See, e.g.,* R.I. Gen. Laws § 28-44-38. The City, as Plaintiff's former employer, is but a participant in that administrative process.[5]

### 4. Plaintiff's Interpretation of the PERA Ordinance for Purposes of Wrongful Termination is Plainly Wrong

Despite the fanciful arguments in Plaintiff's objection, the PERA Ordinance clearly and unambiguously does not require city council approval before removal of PERA's executive director. *Compare Providence Code of Ordinances* §§ 18½-2(a) and (g). There is no legal basis, nor does Plaintiff' cite one, for his proposition that "the Executive Director may be removed *in the same manner* that they are appointed," *Pltf's* Objection, at 36 (emphasis added). From this Plaintiff submits that his removal required both a majority vote by PERA *and* city council approval. Although city council approval is required for appointment of PERA's executive director, it is

---

[5] Although admittedly beyond the scope of the complaint, Municipal Defendants include mention that the Department of Labor and Training awarded Plaintiff unemployment benefits, and it is Municipal Defendants' understanding that he has been collecting them during the pendency of this action.

still PERA, not the city council, that is the appointing authority. Furthermore, § 904 of the Charter, which gives "[a]ll department heads, and all boards, agencies, and commissions of the city the responsibility for the appointment, promotion, suspension and dismissal of all employees under their jurisdiction," does not require that dismissals be carried out "in the same manner" as appointments. Accordingly, Plaintiff's wrongful termination claim under the PERA Ordinance is implausible.

### 5. Plaintiff's Case Law Regarding § 1983 Punitive Damages Is Not Supportive

Despite the fact the United States and Rhode Island Supreme Court have severely restricted the availability of punitive damages against a municipality, *see City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 261 n. 21 and *Graff v. Motta*, 695 A.2d 486, 490 (R.I. 1997), Plaintiff's objection cites to two United States Supreme Court cases—*Bisbal-Ramos v. City of Mayaguez*, 467 F.3d 16, 25 (2006) and *Smith v. Wade*, 461 U.S. 30, 56 (1983)—to seemingly support an argument to the contrary with regard to his § 1983 First Amendment claim.[6] Neither of those cases, however, supports Plaintiff's position. Instead, both decisions note the unavailability of punitive damages against a municipality. *See Bisbal-Ramos*, 461 U.S. at 21 n.3 ("punitive damages are not available against the municipality"); *Smith*, 461 U.S. at 30 n. 5 ("In *Newport* … we held that a municipality … is immune from liability for punitive damages under § 1983.").

---

[6] Plaintiff does not cite or argue any legal basis for an award of punitive damages under the other statutes at issue in this case.

Here, Plaintiff's § 1983 claims are brought against a municipal entity. *See Complaint*, ¶¶ 3-12. *See also Hafer v. Melo*, 502 U.S. 21, 25 (1991) (official capacity suits "represent only another way of pleading an action against an entity of which an officer is an agent") (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) and *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 n.55 (1978)). Accordingly, there is no basis for permitting a § 1983 award of punitive damages.

## III. CONCLUSION

For the reasons previously made as well as stated herein,[7] Municipal Defendants respectfully request that this Honorable Court grant this motion to dismiss Plaintiff's complaint.

MUNICIPAL DEFENDANTS,
By their attorney,

JEFFREY DANA
CITY SOLICITOR

*/s/ Megan Maciasz DiSanto (#7991)*
Senior Assistant City Solicitor
City of Providence Solicitor's Office
444 Westminster Street, Suite 220
Providence, RI 02903
(401) 680-5333
(401) 680-5520 (Fax)
mdisanto@providenceri.com

---

[7] Municipal Defendants in this reply do not add argument in support of the implausibility of Plaintiff's Whistleblower Protection Act claim and rely upon their memorandum in main, as it sufficiently addresses Plaintiff's oppositional arguments.

## **CERTIFICATION**

I hereby certify that I have filed the within with the United States District Court on this 22nd day of July 2021, that a copy is available for viewing and downloading via the ECF system, and that I have caused a copy to be sent to:

William J. Conley, Jr. (#2149)
Law Office of William J. Conley, Jr.
123 Dyer Street, Suite 2B
Providence, RI 02903
wconley@wjclaw.com

*/s/Megan Maciasz DiSanto*